UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

FRANKIE M., JR.,[1]

        Plaintiff,

  v.                                                                                    20-CV-529-LJV
                                                                                        DECISION & ORDER

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.
_____

On May 4, 2020, the plaintiff, Frankie M., Jr. ("Frankie"), brought this action under the Social Security Act ("the Act"). He seeks review of the determination by the Commissioner of Social Security ("Commissioner") that he was not disabled. Docket Item 10. On January 2, 2021, Frankie moved for judgment on the pleadings, Docket Item 12; on March 3, 2021, the Commissioner responded and cross-moved for judgment on the pleadings, Docket Item 13; and on March 24, 2021, Frankie replied, Docket Item 14.

For the reasons stated below, this Court denies Frankie's motion and grants the Commissioner's cross-motion.[2]

---

[1] To protect the privacy interests of Social Security litigants while maintaining public access to judicial records, this Court will identify any non-government party in cases filed under 42 U.S.C. § 405(g) only by first name and last initial. Standing Order, Identification of Non-government Parties in Social Security Opinions (W.D.N.Y. Nov. 18, 2020).

[2] This Court assumes familiarity with the underlying facts, the procedural history, and the ALJ's decision and will refer only to the facts necessary to explain its decision.

## **STANDARD OF REVIEW**

"The scope of review of a disability determination . . . involves two levels of inquiry." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987).  The court "must first decide whether [the Commissioner] applied the correct legal principles in making the determination." *Id*.  This includes ensuring "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the Social Security Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)).  Then, the court "decide[s] whether the determination is supported by 'substantial evidence.'" *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)).  "Substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  "Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to correct legal principles." *Johnson*, 817 F.2d at 986.

## **DISCUSSION**

Frankie argues that the Commissioner erred in two ways.  *See* Docket Item 12-1. First, he argues that the ALJ did not appropriately address and appreciate his mental

2

impairments and then failed to account for them in his RFC.[3]  *Id.*  More specifically, Frankie says that the ALJ did not include a limitation for additional supervision and overlooked some evidence of his memory issues.  *Id.* at 20-21.  Second, Frankie argues that the Appeals Council erred by not properly considering additional evidence that Frankie submitted with his appeal.  *Id.*

This Court disagrees and accordingly affirms the Commissioner's finding of no disability.

## I.     RFC FORMULATION

Frankie argues that the ALJ "mischaracterized and cherrypicked evidence of [his] limited intellectual functioning" in formulating his RFC[4]  and that the RFC therefore was not supported by substantial evidence.  *Id.* at 19.  This Court disagrees.

---

[3] A claimant's RFC "is the most [he] can still do despite [his] limitations," 20 C.F.R. § 416.945, "in an ordinary work setting on a regular and continuing basis," *see Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 86–8, 1986 WL 68636, at *8 (Jan. 1, 1986)).  "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule."  *Id.*

[4] The ALJ determined that Frankie had the RFC "to perform medium work . . . except [that he] can lift and carry, push and pull fifty pounds occasionally and twenty five pounds frequently, can sit for six hours and stand or walk for six hours and in an eight hour day, can climb ramps and stairs occasionally, can never climb ropes, ladders or scaffolds, can never balance, can occasionally stoop, kneel, couch and crawl, is limited to hearing and understanding simple oral instructions and to communicating simple information, can never work at unprotected heights, can work with moving mechanical parts occasionally, should not operate a motor vehicle as a duty of employment, should not be required to handle, sell or prepare controlled narcotic substances or alcoholic beverages, can understand, remember and carry out simple, routine and repetitive tasks, is limited to simple work-related decisions, should have no more than incidental (1/6 of a work shift) interaction with co-workers and the public as necessary to perform assigned work but visible or audible contact is permitted at all other times as long as no contact is required, and no more than incidental (1/6 of work shift) requirement for reading, writing or math for job related content, taking messages or following task-related instructions."  Docket Item 10 at 19-20.

An ALJ fulfills his or her "'responsibility' of 'assessing [a claimant's] residual functional capacity' by reviewing 'all the relevant evidence' which includes 'objective medical evidence.'" *Dougherty-Noteboom v. Berryhill*, 2018 WL 3866671, at *10 (W.D.N.Y. Aug. 15, 2018) (quoting relevant regulations). "Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he [is] entitled to weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013).

In formulating a claimant's RFC, an ALJ must "conduct a distinct analysis that [permits] adequate review on appeal," *Aung Winn v. Colvin*, 541 F. App'x 67, 70 (2d Cir. 2013), and each of the ALJ's conclusions must be supported by relevant medical evidence, *see Talavera v. Astrue*, 697 F.3d 145, 151 (2d. Cir. 2012). When an ALJ does "not connect the record evidence and RFC findings" or otherwise "explain how the record evidence supported his RFC findings," the decision leaves the court "with many unanswered questions and does not afford an adequate basis for meaningful judicial review." *Gorny v. Comm'r of Soc, Sec.*, 2018 WL 5489573, at *4 (W.D.N.Y. Oct. 29, 2018). But the "ALJ is not required to discuss every piece of evidence submitted" to make a decision that is supported by substantial evidence. *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012). And before a court can find that an ALJ's decision is not supported by substantial evidence—a standard even more forgiving "than the 'clearly erroneous' standard"—the court must find that "a reasonable factfinder would *have to conclude otherwise*." *Id.* (quotation omitted and emphasis in original).

4

Contrary to Frankie's assertions, the ALJ here indeed appreciated and accounted for the evidence of Frankie's memory issues in formulating his RFC. The RFC limited Frankie to work that entailed understanding, remembering, and carrying out only "simple, routine and repetitive tasks." Docket Item 10 at 19. And the ALJ based that determination on both the medical data and opinions from two providers about Frankie's intellectual functioning. *Id.* at 21-22.

The ALJ gave "great weight" and "little weight" to parts of the opinion of Janine Ippolito, Psy.D.: "great weight" to Dr. Ippolito's opinion "with respect to [Frankie]'s mental health functioning" and "little weight" to her opinion about Frankie's "intellectual functioning."[5] *Id.* at 22. Dr. Ippolito credited Frankie's subjective reports of "short-term memory deficits" and found his recent and remote memory skills to be mildly impaired, *id.* at 380, 381; she opined that Frankie had moderate limitations in learning new tasks, performing complex tasks independently, and making appropriate decisions, *see id*. at 22. The ALJ explained that while certain testing performed by Dr. Ippolito yielded results different from those found by testing done earlier, there was "no significant difference" in Frankie's "actual functional abilities," and his adaptive functioning therefore was better than what was suggested by Dr. Ippolito's testing. *Id*. So the ALJ accepted much of what Dr. Ippolito found and explained why he gave less weight to the rest.

---

[5] Dr. Ippolito's opinion consisted of two reports: one entitled "Psychiatric Evaluation," *id.* at 379, and the other "Intelligence Evaluation," *id.* at 384. The ALJ apparently gave great weight to the former and little weight to the latter. *Id.* at 22. In any event, he incorporated Dr. Ippolito's concerns about Frankie's memory issues into the RFC.

The ALJ gave "great weight" to the opinion of S. Juriga, Ph.D., which the ALJ called "the State agency opinion." *Id.* at 22.  Like Dr. Ippolito, Dr. Juriga found that Frankie had memory limitations.  *Id.* at 94.  In fact, Dr. Juriga opined that Frankie's "ability to understand and remember detailed instructions" was moderately limited, *id*.—that is, even more severe than the mild impairment Dr. Ippolito found, *see id.* at 380, 381.  But Dr. Juriga also found that Frankie's ability to "remember locations and work-like procedures" and "to understand and remember very short and simple instructions" was "not significantly limited." *Id.* at 94.

The ALJ appropriately weighed the opinions of Drs. Ippolito and Juriga in formulating Frankie's RFC.  He limited Frankie to work that required following only simple instructions and communicating only simple information. *Id*. at 19.  He specifically addressed the memory issues that both doctors diagnosed by finding that Frankie could "understand, remember and carry out" only "simple, routine and repetitive tasks" and could make only "simple work-related decisions." *Id*.  In other words, he based the RFC on the medical opinions, and he explained how he did so.

Frankie argues that the RFC did not address all the evidence of his memory issues—specifically Frankie's hearing testimony and the treatment records from Dent Neurologic Institute ("Dent").  Docket 12-1 at 20-21.  But, as noted above, the ALJ was "not required to discuss every piece of evidence submitted" to formulate an RFC supported by substantial evidence.  *Brault*, 683 F.3d at 448.  Moreover, the opinions that the ALJ weighed were consistent with the record as a whole, including the hearing testimony and Dent records.  *Compare* Docket Item 10 at 94 (Dr. Juriga's opinion that Frankie's "ability to understand and remember detailed instructions" was moderately

limited), *with id*. at 63 (Frankie's hearing testimony that he has difficulty with his memory); *id.* at 534, 765, 804, 809, 833 (records from Dent documenting Frankie's complaints to providers as well as clinical observations of his memory issues). And, as just noted, the ALJ explicitly incorporated Frankie's memory limitations into the RFC.

Frankie repeatedly argues that the ALJ "cherrypicked" evidence to support his RFC. *See, e.g*., Docket Item 12-1 at 19-23; Docket Item 14 at 1-2. But Frankie never says what evidence was supposedly "cherrypicked" and what evidence was ignored. *See id*. Indeed, Frankie does not point to a single opinion of a medical provider that supports his argument. So Frankie's argument amounts to nothing more than a disagreement with the ALJ's assessment of his RFC. And even if this Court disagreed with that assessment, it could not substitute its judgment for that of the ALJ. *See Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998) ("Where an administrative decision rests on adequate findings sustained by evidence having rational probative force, the court should not substitute its judgment for that of the Commissioner.").

Citing school records from 2013, Frankie also argues that the evidence "supports a need for greater supervision that the ALJ did not account for in [his] RFC." Docket Item 12-1 at 21. But the ALJ explicitly addressed those records. Docket Item 10 at 21. The regulations do not mandate that the ALJ even consider educational records for a claimant of Frankie's age, much less adopt their conclusions. *See Eckert v. Comm'r of Soc. Sec*., 2019 WL 6307353, at *6 (E.D.N.Y. Nov. 25, 2019) ("While an ALJ may consider educational records, they are not required to."). And especially because there is no other medical evidence or opinion suggesting the need for additional supervision in the workplace, the ALJ did not err in that analysis.

7

In sum, the RFC accounted for Frankie's memory difficulties, and the ALJ supported his findings with both medical and opinion evidence in the record. Because this Court cannot say that "a reasonable factfinder would *have to conclude otherwise*," it cannot revisit the ALJ's decision. See *Brault, supra*.

## II.  THE APPEALS COUNCIL'S DENIAL OF REQUEST FOR REVIEW

On an administrative appeal of the ALJ's decision, the Appeals Council may "deny a party's request for review or it may decide to review a case and make a decision." 20 C.F.R. § 416.1481; *see also* 20 C.F.R. § 416.1467. Where, as here, "the Appeals Council denies review, the ALJ's decision becomes the Secretary's final decision." *Perez v. Chater*, 77 F.3d 41, 44 (2d Cir. 1996). And when that happens, the court cannot review "the Appeals Council's non-final administrative decision to deny review" because it is not the final decision. *Countryman v. Colvin*, 2016 WL 4082730, at *11 (W.D.N.Y. Aug. 1, 2016) (quoting *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992)).

But "new evidence submitted to the Appeals Council following the ALJ's decision becomes part of the administrative record for judicial review when the Appeals Council denies review of the ALJ's decision." *Perez*, 77 F.3d at 45. Accordingly, this Court "review[s] the entire administrative record, which includes the new evidence, and determine[s], as in every case, whether there is substantial evidence to support the decision of the [Commissioner]." *Id.* at 46. And because Frankie has "fail[ed] to establish that the new evidence submitted to the Appeals Council was inconsistent with either the medical evidence already in the record or with the ALJ's RFC determination,"

8

*see Countryman*, 2016 WL 4082730, at *12*,* the ALJ's decision remains supported by substantial evidence.

Frankie submitted additional medical records to the Appeals Council from Dent, Kenmore Mercy Hospital, Health Home Partners, and New York State Department of Health. Docket Item 10 at 6. Most of those records were duplicate copies already in the record*, id.* at 570-90, 593-98, 664-67, 901-02, 998-1012, and the Appeals Council declined to review them for that reason. And the remaining new evidence provides no reason to revisit the ALJ's decision.

Citing "Tr. 45 [and] 46," found at Docket Item 10 at 49-50, Frankie argues that forms from Home Health Partners and Dent showed that his mental health was "worsening" and that he "had inconsistent treatment," Docket Item 12-1 at 24-25; he says that if the ALJ had considered these records, there was a reasonable possibility that the outcome would have been different. *Id.* But neither of these documents included anything new; on the contrary, they appear simply to be an attempt to transition him from pediatric to adult care and a certification for participation in a medical marijuana program. *See* Docket Item 10 at 49 ("At age 22 he will have to discharge from this clinic. He will need help finding an adult provider . . . ."); *id.* at 50 (medical marijuana program patient certification). In any event, they include no new medical findings or opinions.[6]

---

[6] The referral form does say "his health has been getting worse." *Id.* at 49. But "his health" seems to refer to the health of Frankie's "surrogate grandparent," not Frankie. *See id.* ("Frank has a 'surrogate grandparent' (Paul Meyer) who helps him with most needs but his health has been getting worse which has led to inconsistent treatment.") And even if it does refer to Frankie, that conclusory and passing reference, in a referral form without any explanation or support, is insufficient to change the conclusion that substantial evidence supports the ALJ's decision.

Frankie also argues that new reports of seizures "may have been dispositive to the [ALJ's] decision." Docket Item 12-1 at 25. But as Frankie himself observes, the ALJ had already considered Frankie's seizures in his decision. *Id.; see also* Docket Item 10 at 18, 20, 21. In fact, the ALJ considered both Frankie's subjective reports and objective medical evidence of seizures and related symptoms. Docket Item 10 at 18, 20, 21.

What is more, the records that Frankie calls "new evidence" support the ALJ's finding that medication worked to control Frankie's seizures. *Id.* at 18. For example, Frankie reported "a new seizure event" in October 2017, but the new records indicate that he had forgotten to take his medication that day—medication that "improved both his seizures and his mood." *Id.* at 42; *see also id*. ("Marijuana[] helps with the seizures."). As such, the new evidence "does not add so much as to make the ALJ's decision contrary to the weight of the evidence." *Rutkowski v. Astrue*, 368 F. App'x 226, 229 (2d Cir. 2010).

## **CONCLUSION**

Although this Court has sympathy for Frankie and the hardships that must stem from his impairments, the ALJ's decision neither was contrary to the substantial evidence in the record nor did it result from any legal error.  Therefore, and for the reasons stated above, Frankie's motion for judgment on the pleadings, Docket Item 12, is DENIED; the Commissioner's cross motion for judgment on the pleadings, Docket Item 13, is GRANTED; the complaint is DISMISSED; and the Clerk of Court shall close the file.

SO ORDERED.

Dated:     January 31, 2022
           Buffalo, New York


                                              */s/ Lawrence J. Vilardo*
                                              LAWRENCE J. VILARDO
                                              UNITED STATES DISTRICT JUDGE